Milford E. Schluter and Olive O. Schluter v. Commissioner.
Schluter v. Commissioner
Docket No. 3856-69 SC.
United States Tax Court
T.C. Memo 1970-67; 1970 Tax Ct. Memo LEXIS 294; 29 T.C.M. (CCH) 297; T.C.M. (RIA) 70067; March 17, 1970, filed. *294 Milford E. Schluter, pro se, 9875 E. Jensen, Sanger, Calif. Edward B. Simpson, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a $113.98 deficiency in petitioners' 1966 income tax. Petitioners, husband and wife, resided in Sanger, California, at the time of filing their petition herein. They filed their 1966 joint income tax return with the district director of internal revenue at San Francisco, California. During 1966 they resided in Fresno, California. The husband will sometimes hereinafter be referred to as petitioner. The only question is whether petitioner furnished more than one-half the support of his son Donald F. Schluter ("Donald") during 1966 so as to be entitled to a $600 exemption claimed in respect of Donald. The deficiency is based solely upon the disallowance of the deduction for that exemption. A stipulation of facts filed by the parties is incorporated herein by this reference. Petitioner was formerly married to the present Jeanne O. Chevalier. They were divorced pursuant to a final decree entered March 30, 1961. They are the natural parents of Donald as well as of two older children, Vivian *295 Kay Schluter and Bonnie Jen Schluter. No exemptions were claimed by petitioners for Bonnie and Vivian. The divorce decree awarded custody of Donald to Jeanne and ordered that petitioner pay her $75 a month for Donald's support. Pursuant to that decree petitioner in fact paid $962.50 during 1966 towards the support of Donald. Donald was born December 19, 1949. During 1966 he was living with his mother in a house owned by her in Lakeside, California, a small rural community near San Diego. Its rental value was about $110 a month. By June of 1966 Donald had completed his junior year at high school, and beginning June 10 or 11, 1966, he went to work for a man named David Sherby, who owned a moving van and was engaged in the moving business. The record does not disclose whether this was intended merely as summer employment. Donald stayed at Sherby's home for a week or two, and later in June he and Sherby departed for Canada and the East Coast in the moving van. Donald received compensation for his work, but the record does not disclose the amount earned by him or the amount spent by him for his own support. Upon arriving in the East the van was involved in a serious accident, and as *296 a consequence Donald was hospitalized for somewhat over three months (until October 25, 1966) at Havre de Grace, Maryland. The record shows that medical expenses were paid by an insurance company, but it is not clear whether any additional medical expenses were paid on his behalf apart from those borne by the insurance company, notwithstanding petitioners' testimony 298 that such was "[not] likely". When Donald left the hospital on October 25, 1966, Jeanne paid for his transportation back (by air) to the San Diego area, and he resumed living at her house for the remainder of the year. Reimbursement for these transportation costs was subsequently obtained from the insurance company in a later year. At no time during 1966 did Donald reside with petitioner. Bonnie also lived with her mother and at least after April 1966 contributed towards the maintenance of the household during that year. Jeanne worked during 1966 as a clerk typist "with the county", and her net take home pay was approximately $4,800. Although she had remarried after her divorce from petitioner, she was not residing with her new husband in 1966. At three unspecified times during 1966 petitioner made automobile *297 trips from his home in Fresno to the San Diego area for the purpose of visiting Donald and attempting to persuade him to return to Fresno to live with petitioners. Petitioner claims that he thus traveled 730 miles; that, at 10 cents a mile, he incurred expenses in the amount of $219 for these trips, about one-half of which, or $110, he seeks to classify as support for Donald. We are satisfied that these trips do not qualify as "support", and that no part of the cost thereof may be taken into account. Cf. . Petitioner also argues that he "made provision for housing for Donald" in his own home in 1966. But this is irrelevant. Custody was awarded to Jeanne, not to petitioner, and, in any event, Donald apparently did not choose to reside with petitioner. Such "housing" can hardly qualify as support. In addition to the $962.50 paid by petitioner pursuant to the divorce decree, he made the following expenditures in respect of Donald: 1. Meals during visits
$20.00
2. Trip to mountains
10.00
3. Clothes
30.00
4. Cash gifts
20.00
5. Packages to hospital
24.00
6. Phone calls 38.00
$142.00
In order to prevail petitioner *298 must establish that he furnished more than one-half of Donald's support in 1966. The burden is a heavy one, and petitioner understandably complains about the unfairness of the law in this respect. But we must apply the law as we find it, and since we do not know or cannot even make a reasonable estimate on this record as to the amount of support furnished by Jeanne or by Donald himself, we are unable to find that petitioner has carried his burden of proof of establishing that he in fact furnished more than one-half of Donald's support in 1966. Decision will be entered for the respondent.